UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARJAN VAHIDIPOUR,<br><br>                Plaintiff,<br><br>-against-<br><br>CVS HEALTH CORP. and CVS RX SERVICES, INC.,<br><br>                Defendants. | 21-cv-4635 (___) (___)<br><br>**COMPLAINT**<br><br><u>Jury Trial Demanded</u> |

Plaintiff Marjan Vahidipour ("Plaintiff" or "Ms. Vahidipour"), by and through her undersigned attorneys, as and for her Complaint, alleges upon knowledge and belief as to herself and her own actions, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

      1.      In this action, Plaintiff Marjan Vahidipour, an employee of Defendants CVS Health Corp. and CVS RX Services, Inc. (together, "CVS") for almost 27 years prior to her illegal discharge, seeks recovery for injuries, and to remedy unlawful discrimination and retaliation in employment, caused by acts and conduct by CVS that constitute discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the New York State Human Rights Law, Executive Law § 296 <u>et seq</u>. (the "NYSHRL"), because of

-1-

Defendants' differential treatment of Plaintiff on the basis of age and disability or perceived disability, and retaliation against her for engaging in protected activity.

**THE PARTIES**

2. Plaintiff is a former employee of Defendants. She is disabled (or perceived to be disabled) as that term is defined under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and is 48 years of age, implicating the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Defendants terminated Plaintiff's employment on or about January 29, 2020. Plaintiff resides in Great Neck, New York.

3. Defendant CVS Health Corporation Inc. and CVS RX Services Inc., which is, upon information and belief, a subsidiary or affiliate of Defendant CVS Health Corporation, are both "employers" within the meaning of the ADEA, ADA, and NYSHRL. CVS Health Corp. is a company incorporated in the state of Delaware; CVS RX Services is, upon information and belief, incorporated in and/or authorized to do business in New York State.

**JURISDICTION AND VENUE**

4. This Court has original subject matter jurisdiction over this matter based upon a federal question (28 U.S.C. § 1331) presented under the ADEA and ADA. Administrative proceedings required pursuant to 29 U.S.C. § 626 as a prerequisite to commencing this action under the ADEA were instituted with the U.S. Equal Employment Opportunity Commission on or about October 27, 2020.

5. Supplemental jurisdiction over Plaintiff's claims alleging violations of the NYSHRL exists pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper under 28 U.S.C. § 1391. Acts and transactions herein complained of have taken place in this State, including the unlawful employment and labor practices or acts about which Plaintiff complains. Defendants may be found in this district and Plaintiff was employed in this district.

**STATEMENT OF FACTS**

7. Plaintiff Marjan Vahidipour first started working for CVS in 1993. Following her graduation from the College of Pharmacy and Health Sciences at St. John's University in 1995, Ms. Vahidipour began working at CVS as a licensed Pharmacist, moving to CVS Store 1963 in Great Neck as a Pharmacist, including her appointment as the Pharmacy Manager of the store from 2012 to 2017, when she voluntarily stepped down as Pharmacy Manager and again became one of the store's regular Pharmacists.

8. As both a Pharmacist and the Pharmacy Manager, Ms. Vahidipour gave CVS decades of superb performance and strong and loyal service. Her competence and friendly approach to our customers made her so popular that literally hundreds of pharmacy customers called and wrote CVS to complain after my illegal discharge.

9. In or about July 2019, Rick Bowen became the district leader of CVS stores in the Great Neck area, and in or about October 2019, Kimberly Chan, who was at that time in her 20s and had worked for Ms. Vahidipour as a student intern starting in May 2019 until she received her Pharmacist degree later that year, was appointed Pharmacy Manager in Store 1963.

10. Almost immediately after being promoted to Pharmacy Manager, Chan and Bowen on October 23, 2019, abruptly called Ms. Vahidipour into a meeting. Addressing her

with hostility, they issued Ms. Vahidipour a "Level II counseling," accusing her of poor performance in several areas, including allegations that:  Ms. Vahidipour could not multi-task; was slow in filling prescriptions; tolerated long lines; did not lead (though not the Pharmacy Manager) the team to address customer service issues; did not answer the phone or follow through on emails; and would not leave my station to help other pharmacists.

11.     None of these allegations were true or accurate.  Shockingly, this was the first time Ms. Vahidipour had been confronted with any of the allegations, which Chan leveled only weeks after becoming the Pharmacy Manager and only a few months after she started at CVS as a student intern before she graduated from pharmacist school.

12.     In the October 23 meeting, both Bowen and Chan stated clearly that her age was a motivating factor in the attack on her.  Bowen stated, in a hostile tone, that "times have changed and you are not mobile enough," and that he was removing Ms. Vahidipour from the store at which I had worked for 20 years.  Chan stated that Ms. Vahidipour was "a mother figure to me," and that – bizarrely, as she was the Pharmacy Manager – that Ms. Vahidipour "could not tell [her] what to do."

13.      These statements are strong evidence that age was a but-for factor in the surprise counseling notice and the related decision to remove Ms. Vahidipour from the store and

14.     The meeting also put into focus the recent hiring by Chan of another much younger woman, Diana Abramov, even though there had not been an opening for a new pharmacist in year:  Bowen and Chan intended to use to replace Ms. Vahidipour with the younger (and presumably more "mobile") Abramov.

15.     Ms. Vahidipour called CVS HR on October 24, 2019, to complain about the so-called counseling, the hostility manifested by Bowen and Chan, and their inappropriate and agist comments.  She subsequently also called the CVS Ethics hotline, on November 9, 2019, to complain about Chan and Bowen's hiring Abramov.  During the October 24 complaint, CVS HR asked Ms. Vahidipour when she had last been given a performance review, and she informed HR that the "counseling" was the first comment on her performance from CVS in about three years, after years of good prior reviews.

16.     The next day, on October 25, 2019, Bowen called Ms. Vahidipour and informed her that he was not transferring her out of Store 1963, but that the "counseling" would not be withdrawn, despite its inaccuracies and false accusations.

17.     Although Ms. Vahidipour had hoped that her complaint to HR and explanation to Chan and Bowen that the "counseling" was not accurate would have ended the attempt to dispose of her because of age, after 27 years with CVS, but on November 27, 2019, Bowen and Chan presented Ms. Vahidipour with another performance "counseling," this time called a "Level III – Final Warning," which mirrored most of the same false allegations in the first "counseling," but added the additional outrageous and equally false accusations that, despite the fact that Ms. Vahidipour had worked for 20 years as a pharmacist in the same store, including five years as the Pharmacy Manager, she did not understand or utilize even the most basic operational procedures, and did not know "where drugs are located."  None of these statements was factually accurate.

18. Bowen again explicitly and expressly connected the false review to Ms. Vahidipour's age, this time even more explicitly, stating that "times are changing, the company is changing, and I have to give the younger generation a chance."

19. This new and more serious attack devasted Ms. Vahidipour, as it was clear to her that Bowen and Chan were targeting her based on my age, despite her years of excellent work for CVS.  Ms. Vahidipour found herself struggling, and burst into tears throughout the day.

20. Later that same day, Ms. Vahidipour called CVS HR a second time to complain about the "counseling" and ageist comments, and CVS HR informed her – more than a month after the initial complaint – that they would open an investigation into her complaints.

21. Ms. Vahidipour was then home on sick leave with the flu the week after the second "counseling," from December 4-10, 2019.

22. Technician "help hours," which assisted the pharmacists in keeping up with customer demand, were cut 30% in December in Store 1963, so that during the period that Ms. Vahidipour was out on medical leave work-flow in the Pharmacy generally was backed up and everyone was behind.  At that exact same time, despite the 30% cut in technician assistance and Ms. Vahidipour's absence, showing extremely poor timing and no leadership, Chan was out on vacation from December 8-14, 2019.  The obvious and predictable result of these realities is that, even with a "floater pharmacist" placed in the store from December 8-12, 2019, when Ms. Vahidipour returned to work on December 11, 2019, she discovered the biggest back-up of work in the Pharmacy that she had ever seen in 20 years at the store.

23. In its pharmacies, CVS uses a "Q" system, which stands for four different type of action "quests" that are meant to prioritize the work of the pharmacists on call and ensure

that they are focused on the most time-sensitive work. When Ms. Vahidipour returned to work after a week out with the flu, the Qs were severely backed up, with several of the lists showing more than 99 unfulfilled Qs. This was extraordinary and Ms. Vahidipour could not understand how it could have been allowed to occur.

        24. Ms. Vahidipour took pictures of the Qs and emailed them to Bowen and informed him of the situation she discovered upon her return to work on December 11, 2019, but heard nothing from him in response. Subsequently, Ms. Vahidipour learned that Bowen had been replaced by a new District Leader, Paul Kostishak, who came to the store to help respond to the highly unusual situation.

        25. Even with the assistance of a part-time pharmacist helping out while Chan was on vacation, the backlog was so extreme that we could not catch up on December 11, 2019, the day on which Ms. Vahidipour returned to work. She was not scheduled to work December 12-14, 2019, and after Ms. Vahidipour's return to work on December 15, 2019, which was also Chan's first day back after her vacation, the pharmacy team worked for days to try to catch up.

        26. However, the two false "counseling" attacks on Ms. Vahidipour, together with Chan and Bowen's expressly stated desire to dispose of her because of her age and the stress of working non-stop to try to resolve the huge backlog that accumulated when she was out for a week with the flu, took a terrible toll on Ms. Vahidipour and she began to feel terrible chest pains. She visited a cardiologist about the persistent chest pains on December 18, 2019, and after running tests, the doctor was so alarmed at the impact of the pressure and anxiety Ms. Vahidipour was experiencing that he immediately put her on anti-anxiety and anti-depression medication and directed her to take a medical leave for at least two weeks.

27. Based on her doctor's direction, Ms. Vahidipour went out on medical leave from December 18-31, 2019. CVS approved the medical leave Ms. Vahidipour requested by letter to her dated December 31, DVS approved. Chan and Kostishak were aware that Ms. Vahidipour was required by her physician to go out on medical leave and that she was out the second half of December on FMLA leave.

28. Notwithstanding the medical leave, Ms. Vahidipour was in touch with Chan during this FMLA leave because she was so concerned about the backlog of work. Chan informed Ms. Vahidipour that the situation at the store was "terrible" and when Ms. Vahidipour asked Chan what her plan was to address the backlog of Qs, she said "none."

29. Accordingly, upon my my return to work in early January 2020, there was still a backlog, but with more technician hours and assistance from interns, the Q problem slowly got better. Ms. Vahidipour worked unpaid overtime every day to ensure that all pharmacy work was completed before she left the store.

30. On January 11, 2020, Ms. Vahidipour's son was diagnosed with Crohn's disease. He was hospitalized for ten days, but because of her commitment to CVS, Ms. Vahidipour only missed one day of work.

31. Then CVS HR wrote Ms. Vahidipour a letter dated January 13, 2020, to inform her that, without interviewing Ms. Vahidipour or any of her colleagues at CVS, HR was closing her November Complaint, which it said was not "substantiated."

32. Two weeks after the non-investigation resulted in a finding of not substantiated, Kostishak called Ms. Vahidipour into a surprise meeting on January 29, 2019, and fired her. He stated that the reason for the discharge was her performance in December 2019.

33. In fact, Kostishak specifically referred to the December 11, 2019, Q backlog – which Ms. Vahidipour (and not Chan, who was out for a week on vacation) had discovered and about which she had informed Bowen on her return to work after a week on sick leave – and the fact that the backlog was not corrected in the next couple days" as the justifications for terminating her employment.

34. Kostishak and CVS took this position despite the obvious fact that of any pharmacist in Store 1963, Ms. Vahidipour was one who could not possibly have been responsible for the Q backlog because she was on medical leave when it occurred. To be clear, Ms. Vahidipour was out on sick leave with the flu from December 4-10, 2019; she then worked one day, December 11, 2019, during which time she discovered and reported the severe backlog; then Ms. Vahidipour was not scheduled to work and was not at store 1963 from December 12-14, 2019.

35. Notwithstanding these indisputable facts, Kostishak and CVS made the determination to fire Ms. Vahidipour for December 11 Q backlog she discovered on her one-day return to work, and for not personally clearing the backlog on three days she was not scheduled to – and did not – work.

36. CVS cannot claim after the fact that Ms. Vahidipour should have cleared the Q backlog later in December, as she was out on a stress-induced FMLA medical leave from December 18-31, 2019.

37. CVS's explanation for discharging Ms. Vahidipour is demonstrably false and clear pretext for the real reason, which was Chan and Bowen's stated desire to move out older employees and replace them with younger ones. Additionally, upon information and

belief, Chan and Kostishak's determined that there was something medically wrong with Ms. Vahidipour based upon her need for three weeks of sick and medical leave in December and their desire to replace her with someone who was not just younger, but less sick and/or without a medical condition.

38. Chan and Kostishak immediately replaced Ms. Vahidipour with the much younger Abramov, who also had no apparent medical condition, whom Chan and Bowen had hired in October when they first tried to force Ms. Vahidipour out on false pretexts.

39. Additionally, the timing of CVS' discharge of Ms. Vahidipour only weeks after CVS HR rejected of her November 2019 complaint and her FMLA medical leave demonstrates that in firing her Chan and Kostishak were retaliating against Ms. Vahidipour for engaging in protected activity by complaining about their and Bowen's conduct.

40. Following the termination of her employment based on age and disability or perceived-as-disabled discrimination, Ms. Vahidipour continuously sought new employment, including at CVS stores in other areas and other districts.  At the time of her discharge, Ms. Vahidipour had been informed that she would be classified as a former employee who could be rehired, and actually was told by a different CVS store that they would hire her as a pharmacist, but job offer was then suddenly withdrawn.  CVS HR informed Ms. Vahidipour when I contacted them after losing the new position that her exit had been re-classified to do-not-rehire based on poor performance.  This post-hoc re-classification based on the false and pretextual reasons provided to Ms. Vahidipour as the basis for the decision to fire her was also retaliation for her having engaged in protected activity.

## COUNT I

### Discrimination and Retaliation in Violation of the ADEA

41. Plaintiff repeats and realleges paragraphs 1 through 40 as if fully set forth herein.

42. CVS was at all relevant times herein Plaintiff's "employer" and Ms. Vahidipour was their "employee" as those terms are defined under the ADEA, 29 U.S.C. § 630.

43. CVS, through its agents and representatives, including managerial or supervisory employees, classified and/or stereotyped Plaintiff because of and/or but for her age in a manner to affect adversely Ms. Vahidipour's status as an employee, and otherwise denied Plaintiff equal opportunities for employment, in violation of the ADEA, 29 U.S.C. § 623(a).

44. By their differential treatment of Ms. Vahidipour because of her age as set forth above, including, but not limited to, their the false and inaccurate "counselings," blaiming Ms. Vahidipour for the Pharmacy backlog that occurred during her medical leave, and ultimately, the termination of her employment, CVS discriminated against Ms. Vahidipour by denying her equal terms and conditions of employment because of and/or but for her age, in violation of the ADEA, 29 U.S.C. § 623(a).

45. The retaliatory conduct and actions taken by Defendants JBNY and PPL in response to, and as a result of, Plaintiff's expressed opposition to the discriminatory acts and conduct were causally connected to Mr. Uddin's protected activity, namely, protesting, addressing and opposing the age-based discrimination committed against him.

46. CVS not just engaged in a decidedly discriminatory path against Ms. Vahidipour, but also, open and egregious fashion, retaliated against her because she engaged in protected activity by complaining about the illegal treatment to which she was subjected.

47. By their treatment of Ms. Vahidipour through its supervisors and/or managers, agents and representatives, CVS has have severely damaged Ms. Vahidipour. In addition to back pay compensatory damages for the mental anguish, pain and suffering, and humiliation she has has suffered, and front pay and benefits (or reinstatement), Ms. Vahidipour also seeks all other appropriate damages, including, but not limited to, punitive damages and reasonable attorneys' fees and costs.

48. Defendants JBNY's and PPL's conduct was willful in that they knew that the aforementioned conduct violated the ADEA or showed a reckless disregard that their conduct violated Plaintiff's rights under the ADEA

## COUNT II

### Disability Discrimination in Violation of Title I of the ADA

49. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 48 above with the same force and effect as if fully set forth herein.

50. CVS was at all relevant times herein Plaintiff's "employer" and Ms. Vahidipour was their "employee" as those terms are defined under the the ADA, 42 U.S.C. § 12111(2), (4) and (5).

51. CVS, through its agents and representatives, including managerial or supervisory employees, classified and/or stereotyped Plaintiff because of and/or but for her age

in a manner to affect adversely Ms. Vahidipour's status as an employee, and otherwise denied Plaintiff equal opportunities for employment,

52. CVS employed more than 500 employees in each of 20 or more calendar weeks in the current and preceding calendar years.

53. Plaintiff is an individual with a disability, or was perceived by CVS to have had a disability, as defined in the ADA.

54. Plaintiff is a "qualified individual" with a disability as defined in the ADA, 42 U.S.C. § 12111(8). At all relevant times herein, Plaintiff performed or could perform the essential functions of the employment position she held, with or without reasonable accommodation.

55. CVS, through its managers and supervisors, unlawfully and intentionally discriminated against Plaintiff because of her disability or its perception that she was disabled, as defined in the ADA, thereby violating the ADA, 42 U.S.C. § 12112, by treating her differently because of her utilization of leaves of absence to treat her disability and by denying her equal or lawful treatment through its application of disparate terms, conditions and privileges of employment, ultimately discharging Plaintiff from her employment.

56. CVS' insistence on treating Plaintiff differently and worse than other employees on the basis of her disability constitutes unlawful discrimination in violation of the ADA, 42 U.S.C. § 12112, and Plaintiff is entitled to damages as a result.

## COUNT III

### Retaliation in Violation of the ADA

57.  Plaintiff repeats and re-alleges paragraphs 1 through 56 as if fully set forth herein.

58.  CVS was aware that Plaintiff engaged in a protected activity when she complained about and opposed harassment and discrimination on the basis of her age and when she utilized a FMLA leaves of absence. After Plaintiff complained of and expressed her opposition to CVS' discriminatory and/or retaliatory treatment of her, CVS, through its agents, representatives or employees, retaliated against Plaintiff by taking materially adverse action against her in violation of the ADA in violation of 42 U.S.C. § 12203.

59.  That retaliation has had a materially adverse impact upon Plaintiff's position, career and well-being and was designed to punish her for having opposed or complained about the unlawful and humiliating treatment she was forced to endure. CVS has caused Plaintiff to suffer injury or illness and terrible and continuing emotional pain and suffering, including devastating mental anguish and distress.

60.  CVS knew or, in the exercise of reasonable care, should have known, of the abusive and reprehensible conduct directed against Plaintiff by its supervisory and managerial employees but, nevertheless, did nothing, thereby acquiescing and condoning the unlawful conduct.

61.  The retaliatory conduct and actions taken by CVS were causally connected to Plaintiff's protected activity, *i.e.*, opposing and protesting discrimination, harassment, and

retaliation fostered by CVS based upon Ms. Vahidipour's disability or perceived disability, and/or utilizing FMLA leaves of absence.

62. CVS failed effectively to remedy or prevent and, indeed, exacerbated the reprisal against Plaintiff, although it knew, or in the exercise of reasonable care, should have known, of the retaliation and its causal effect upon Plaintiff.

63. The hostile, abusive, demeaning and humiliating work environment resulting from the retaliation to which Plaintiff was subjected unreasonably interfered with Plaintiff's work, constituted unlawful and material adverse actions, and ultimately resulted in Ms. Vahidipour's termination from employment, in violation of ADA, 42 U.S.C. § 12203, and Plaintiff is entitled to damages as a result.

## COUNT IV

## Discrimination and Retaliation in Violation of the NYSHRL

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of this Complaint with the same force and effect as if set forth herein.

65. The above discriminatory acts and practices of CVS, including but not limited to its discrimination against Ms. Vahidipour based upon her age and/or disability or perceived disability, and its retaliation against Ms. Vahidipour for engaging in protected activity, constitute unlawful employment practices within the meaning of the NYSHRL.

66. As a result of defendants' discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage and damages for mental anguish, emotional distress and humiliation unless and until this Court grants relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Marjan Vahidipour respectfully requests that this Court grant the following relief:

A. that the Court enter judgment for Plaintiff against Defendant in an amount to be proved at trial:

(1) for back pay, including wages and any and all other benefits that would have been received by Plaintiff from CVS but for her discharge and other unequal treatment because of and/or but for her age and retaliation, in violation of the ADEA, together with all of the other rights, privileges, and benefits appurtenant thereto, including, but not limited to, liquidated damages for CVS' willful violation of the ADEA;

(2) for reinstatement to her job and position in Store 1963, including but not limited to reinstatement of all seniority and other attendant benefits, or, alternatively, for front pay, including wages and any and all other benefits that would be received by Plaintiff from CVS but for her discharge and other unequal treatment because of and/or but for her age and retaliation, in violation of the ADEA, until the date of Plaintiff's normal retirement age, together with all of the other rights, privileges, and benefits appurtenant thereto; and

(3) for such general, special, compensatory, and punitive damages, including damages for Plaintiff's pain and suffering, humiliation, and mental anguish, as authorized under the laws, statutes and regulations upon which this action is premised, together with such other relief as to this Court against CVSmay seem just and proper, including, but not limited to, costs and disbursements, and attorneys' fees;

      B.      that the Court enter judgment for Plaintiff against Defendants, jointly and severally, in an amount to be proved at trial:

      (1) for back pay, including wages and any and all other benefits that would have been received by Plaintiff from Defendant but for her discharge and other unequal treatment because of her age and/or disability or perceived disability, and/or retaliation, in violation of the New York State Human Rights Law, Executive Law § 296 et seq., together with all of the other rights, privileges, and benefits appurtenant thereto;

      (2) for reinstatement to her job and position at Store 1963, including, but not limited to, reinstatement of all seniority and other attendant benefits or, alternatively, for front pay, including wages and any and all other benefits that would be received by Plaintiff from Defendant but for her discharge because of her age and/or disability or perceived disability, and/or retaliation, in violation of the New York State Human Rights Law, Executive Law § 296 et seq., until the date of Plaintiff's normal retirement age, together with all of the other rights, privileges, and benefits appurtenant thereto;

      (3) awarding Plaintiff pre-judgment statutory interest for unpaid or improperly paid wages;

      (4) awarding Plaintiff attorneys' fees and the costs of this action; and

      (5) awarding such general, special, compensatory, and punitive damages, including damages for Plaintiff's pain and suffering, humiliation, and mental anguish, as authorized under the laws, statutes and regulations upon which this action is premised, together with such other relief as to this Court may seem just and proper as against Defendant.

**Demand for Trial by Jury**

        Plaintiff hereby demands, pursuant to Fed.R.Civ.P. 38(b), a trial by jury in this action.

Dated:    Brooklyn, New York
             August 16, 2021

                                    HERNSTADT ATLAS PLLC

                                    By:_____
                                        Edward Hernstadt
                                        Attorneys for Plaintiff James Veall
                                        45 Main Street, Suite 1030
                                        Brooklyn, New York 10004
                                        T: 212-809-2501